UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


IN RE: PETER PAUL MITRANO,

                    Debtor.

                              Bankruptcy No. 10-20476


PETER PAUL MITRANO,

                    Appellant,

vs.                           Civil Action No. 2:11-0455


HELEN M. MORRIS, Trustee,

                    Appellee.


MEMORANDUM OPINION AND ORDER


        Pending is an appeal of the June 13, 2011, order of the
United States Bankruptcy Court submitted November 18, 2011.


I.


        The preliminary and background information below is
excerpted from the discussion found in United States v. Mitrano,
658 F.3d 117 (1st Cir. 2011).  The decision in Mitrano, which
concerns the appellant and debtor Peter Paul Mitrano, was cited
in his opening brief:

        Mitrano married Virginia Kelly in the District of
        Columbia in 1984. They had three children, born in
        1985, 1986, and 1991. . . . [Following the couple's
        1992 divorce,] [t]he family lived together in the same
        house, although Mitrano and Kelly did not reconcile as
        husband and wife.

In 2000, Kelly moved out of the house and filed an action in New Hampshire seeking sole custody of the children. . . . Kelly obtained temporary custody of the children in early 2001. In 2002, the New Hampshire court issued a final order awarding Kelly sole custody of the children and requiring Mitrano to pay $1,406 per week in child support, plus $300 per week toward past medical expenses. Mitrano has paid no child support since issuance of the final order.

Mitrano attempted to appeal the child support order to the New Hampshire Supreme Court, but the court declined to hear the appeal. He sought and was denied review by the U.S. Supreme Court.  Mitrano then filed suits and appeals in four states (New Hampshire, Vermont, Virginia, and Maryland) and in two federal courts (the District of New Hampshire and the Eastern District of Virginia). In each case he argued that the child support order was invalid because the New Hampshire court lacked subject matter jurisdiction. He lost every case and appeal.

On August 20, 2008, Mitrano was indicted for willfully failing to pay child support in violation of 18 U.S.C. § 228(a)(3). He was tried before a jury in the District of New Hampshire. At trial, Kelly testified that Mitrano worked as a patent lawyer and was a licensed engineer, that he owned two properties in Virginia (one of which generated rental income), and that he owned two Porsche automobiles and another vehicle. . . .

The government . . . introduced filings from Mitrano's 2008 bankruptcy proceeding in the Eastern District of Virginia.FN2 [Footnote 2 states as follows: "The bankruptcy petition was ultimately dismissed, in part because it had been filed in bad faith."]. The bankruptcy filings valued one of Mitrano's unencumbered Virginia properties at $550,000 and a second Virginia property at $900,000, encumbered only by a secured claim of $156,426.87. Records introduced through a representative of the New Hampshire Department of Health and Human Services Office of Child Support showed that Mitrano owed child support in excess of $400,000 for the years 2005 through 2008.

He was convicted, sentenced to serve 24 months in prison, and ordered to pay restitution in the full

> amount of past due child support (including interest).
> . . .

Mitrano, 658 F.3d at 119-20 (footnote omitted).[1]

After having been incarcerated pursuant to the aforementioned criminal sentence in other areas of the United States, Mr. Mitrano was transferred to FCI Beckley on February 9, 2010.  On May 10, 2010, he filed in this district his voluntary petition pursuant to Chapter 13.  On July 21, 2010, Trustee Helen M. Morris ("Trustee") objected to venue.  She appears to have asserted grounds for both dismissal under 28 U.S.C. § 1408 and for transfer under 28 U.S.C. § 1412[2]:

> The debtor asserts his domicile is Virginia, as noted on his petition for "County of Residence or Principal Place of Business." Two of the debtor's three scheduled parcels of real estate are located in Virginia. The third piece is in New Hampshire.  The debtor is simply in West Virginia as a result of a prison sentence. As the answer to Question 15 of the Statement of Financial Affairs asserts, the debtor lived at 4912 Oakcrest Drive, Fairfax, Va., prior to his incarceration beginning with New Hampshire from October 22, 2009. According to the Answer to Question 15, the debtor has been in federal prisons in Oklahoma, Georgia, New [Hampshire] and now West Virginia.
>
> . . . .
>
> It appears that other than his prison account of approximately $75.00, all of the debtor's assets are located in Virginia or New Hampshire.

---

[1]Mr. Mitrano asserts that the court "should not rely upon the facts stated in" the First Circuit's decision.  (Reply at 11).  Inasmuch as Mr. Mitrano cited the decision and the quoted information is referenced purely for contextual purposes, the court deems mention of it appropriate.

[2]Mr. Mitrano asserts that the Trustee did not raise a section 1412 challenge and that the bankruptcy court lacked a record upon which to support transfer under that provision.  As will become apparent, neither contention is well taken.

There is no showing that venue is proper because of the convenience of the parties or in the interests of justice. Venue of a Chapter 13 case may be changed "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. In the instant case, there does not appear to [be] either factor which would allow the case to remain in the Southern District of West Virginia. The debtor requested to appear by phone for the 341 hearing and could appear by phone in any jurisdiction. The debtor's plan does not meet the standards of confirmation. The difference between the value of the assets and the statutory exemptions would indicate that a liquidation of assets needs to be accomplished; and since the real estate, the major asset, is in Virginia and New Hampshire, creditors are better served by the case being transferred to Virginia and converted to Chapter 7.

WHEREFORE, the Trustee prays that the Court will dismiss the petition for improper venue or transfer the case to the proper bankruptcy court in Virginia.

(Obj. at 1-2).[3]

Also on July 21, 2010, the Trustee moved to dismiss or convert the case as a result of Mr. Mitrano's failure to file his tax returns, stating pertinently as follows:

---

[3]Section 1408(a)(1) provides that a Chapter 13 proceeding may be commenced in the district

in which the domicile, residence . . . or principal assets in the United States, of the person . . . that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district . . . .

Id.  The court need not review the bankruptcy court's determination respecting satisfaction of the requirements of section 1408(a)(1).  It is noteworthy, however, that Mr. Mitrano was located in West Virginia for exactly 90 days immediately prior to commencement of his Chapter 13 proceeding.

4

>    This day comes the Trustee and moves the Court to
>    dismiss the above-referenced case pursuant to 11 U.S.C.
>    1307(e), for the reason that the Debtor has failed to
>    file the tax returns required under 11 U.S.C. . . .
>    [1308(a)].
>
>    The debtor testified at the 341 hearing on July
>    21, 2010, that he has had not filed the 2009 federal
>    tax return and has not filed the 2008 and 2009 State of
>    Virginia tax returns.

(Mot. at 1).

On August 3, 2010, Mr. Mitrano responded to the venue

objection, in pertinent part, as follows:

>    Mitrano has been in Federal prison and his exact
>    location has been as directed by the United States of
>    America by and through its Department of Justice and
>    its Federal Bureau of Prisons.  Mitrano has been in
>    federal prison since October 22, 2009.
>
>         . . . .
>
>    Mitrano states under oath that Mitrano was brought by
>    the United States of America to the Federal
>    Correctional Institution in Beaver, West Virginia on
>    February 9, 2010.

(Resp. at 1-2, 4).  Mr. Mitrano additionally cited case law, not

involving section 1408, suggesting that a prisoner resides in the

district of incarceration.

Also on August 3, 2010, Mr. Mitrano responded to the

motion to dismiss, noting that he had "very limited" access to

his records and information while incarcerated.  (Oppos. at 1).

He additionally asserted, _inter alia_, that enforcement of the tax

return requirement would deny him access to the courts in

violation of the Constitution.  He offered to provide the returns

if released, to allow the case to be stayed pending his release,

or to seek an additional 120 days in which to gather the missing returns.

On August 4, 2010, the bankruptcy court held a hearing on the venue objection and the motion to dismiss. On August 13, 2010, the bankruptcy court entered its "ORDER DISMISSING CASE," which provides pertinently as follows:

> At the hearing, the United States Trustee appeared in support of the motion to dismiss and informed the Court of the Debtor's previous bankruptcy case which was filed in the Bankruptcy Court in the Eastern District of Virginia, designated Case No. 08-12890-SSM. This case, which dealt with debts that are substantially similar to the ones scheduled in this Chapter 13 proceeding, was ultimately dismissed after a finding that the Debtor's filing lacked good faith under 11 U.S.C. § 1307(c). The Court finds that the filing of this proceeding was an attempt to circumvent the rulings of the Court in the Eastern District of Virginia. For that reason, in addition to the fact that the Debtor failed to file his tax returns as required by 11 U.S.C. § 1308(a) the Court finds that the Chapter 13 Trustee's motion to dismiss is appropriate. Accordingly, this bankruptcy case is hereby DISMISSED. Because the Court has dismissed this case, the other matters before the Court are moot and the Court declines to rule on their merits.

(Ord. at 1-2).

On August 30, 2010, Mr. Mitrano moved for reconsideration of the August 13, 2010, order. He cited authorities requiring the bankruptcy court to first address the Trustee's venue objections prior to adjudicating the motion to dismiss. He further asserted a due process deprivation inasmuch as he was not permitted to attend the August 4, 2010, hearing

based upon what the bankruptcy court deemed to be an untimely
request to direct his custodian to transport him.[4]

On September 2, 2010, the bankruptcy court scheduled an
October 27, 2010, hearing respecting the reconsideration request.
On September 29, 2010, however, Mr. Mitrano appealed the
bankruptcy court's August 13, 2010, dismissal order.  Mr. Mitrano
recognized that the appeal might be unseasonable: "This appeal
may be premature; there is presently pending a motion for
reconsideration."  (Not. at 1).

The October 27, 2010, hearing was rescheduled to
November 3, 2010, with Mr. Mitrano given leave to participate by
telephone from his place of incarceration.  On November 4, 2010,
the bankruptcy court reinstated the Chapter 13 proceeding on the
condition that Mr. Mitrano comply with the Code-based obligations
imposed upon him.  (Ord. at 1 ("[T]his case shall remain open
only so long as the Debtor demonstrates the willingness and
ability to execute the responsibilities of a Ch. 13 Debtor.").

On May 18, 2011, Mr. Mitrano alerted the bankruptcy
court that, while he remained incarcerated, his new address was
in Washington, D.C.  On May 25, 2011, following unrelated

---

[4]On July 21, 2010, the bankruptcy court scheduled a hearing
on the venue objection and the motion to dismiss.  On August 3,
2010, the day prior to the scheduled hearing, Mr. Mitrano wrote
the bankruptcy court requesting either an order directing his
custodian to transport him for the hearing or permitting him to
appear by telephone by making arrangements with a named
individual at his place of incarceration.

developments in the Chapter 13 proceeding, the bankruptcy court held another hearing respecting the Trustee's objection to venue. Mr. Mitrano participated by telephone from his place of incarceration.  He did not address the grounds for transfer supplied by the Trustee.  He focused instead on demonstrating that he had resided in West Virginia for the greater portion of the 180 days immediately preceding commencement of the Chapter 13 proceeding.

        As is reflected in the electronically recorded hearing, it appears the bankruptcy court found significant the following undisputed facts: (1) Mr. Mitrano's property is located in the Eastern District of Virginia, (2) he was no longer physically present in West Virginia at the time of the hearing, (3) he expected his personal residence following his release from custody to be within the Eastern District of Virginia, which is where he has traditionally resided, (4) transfer would accomplish cost savings for both Mr. Mitrano and his creditors, and (5) the interests of justice were best served by transfer of the case as opposed to dismissal.  The bankruptcy court announced at the conclusion of the hearing its intention to transfer the case. The June 13, 2011, order appealed from was then entered, transferring the bankruptcy case to the Eastern District of Virginia.  The order also disposed of other matters.[5]

---

        [5]The order also deemed the September 29, 2010, appeal noticed by Mr. Mitrano to be moot based upon the November 4, 2010, reinstatement of the Chapter 13 proceeding.  While Mr. Mitrano appeals this determination, the bankruptcy court did not err.  As Mr. Mitrano suggested contemporaneous with filing the first notice of appeal, it was premature.

On June 17, 2011, the Clerk of the Bankruptcy Court sent what appears to be the entirety of a copy of the record electronically, and via regular mail, to her counterpart in the Eastern District of Virginia.  On June 21, 2011, the Clerk of the Bankruptcy Court in the Eastern District of Virginia acknowledged receipt of the transferred case file and assigned the Eastern District of Virginia case number of 11-14531 to the transferred Chapter 13 proceeding.

On June 20, 2011, Mr. Mitrano sent from his place of incarceration a "Motion to Stay Transfer Pending Outcome of Appeal Before the United States District Court for the Southern District of West Virginia ('motion to stay transfer')."  (Mot. at 1).  The motion to stay transfer was apparently received, and filed, by the Clerk of the Bankruptcy Court in this district on June 22, 2011.  In the motion to stay transfer, Mr. Mitrano noted that he had not received a transfer order from the bankruptcy court as of the date of his motion.  A copy of that order, entered June 13, 2011, appears to have been returned to sender based upon the recipient not being found at the address used by the Clerk of the Bankruptcy Court in this district.

Having apparently later received a resent copy, on June 21, 2011, Mr. Mitrano noticed his appeal of the June 13, 2011, transfer order.  On June 30, 2011, the bankruptcy court denied the motion to stay transfer.  On July 1 and 11, 2011, Mr. Mitrano moved to amend his June 21, 2011, notice of appeal.  The July 1,

2011, motion sought an amendment designed solely as a protective device to assure the appeal was timely filed.  The July 11, 2011, amendment sought to add as grounds for appeal the June 30, 2011, bankruptcy court order denying the June 20, 2011, motion to stay transfer of the case.[6]

On July 14, 2011, Mr. Mitrano was released from custody.  His current mailing address is in Fairfax, Virginia, which falls within the geographic boundaries of the Eastern District of Virginia.

II.

Mr. Mitrano's three notices of appeal state that they are filed "under Title 28 U.S.C. § 158(a)(1) . . . ."  (See, e.g., (Not. of App. at 1 (Jun. 23, 2011)).  Title 28 U.S.C. § 158 generally governs appeals from the bankruptcy court.  It provides pertinently as follows under subdivision (a):

> (a) The district courts of the United States shall have jurisdiction to hear appeals
>
> > (1) from final judgments, orders, and decrees;
> >
> > . . . ; and
> >
> > (3) with leave of the court, from other interlocutory orders and decrees;

---

[6]Inasmuch as the case file had been physically transferred by the time Mr. Mitrano sought a stay, the court discerns no error in denial of the motion to stay transfer.

and, with leave of the court, from interlocutory orders
and decrees, of bankruptcy judges entered in cases and
proceedings referred to the bankruptcy judges under
section 157 of this title. An appeal under this
subsection shall be taken only to the district court
for the judicial district in which the bankruptcy judge
is serving.

28 U.S.C. § 158(a) (emphasis added).

The June 13, 2011, order from which Mr. Mitrano appeals
is a venue-transfer decision.  Were the venue transfer order
entered in the usual civil case, it would be deemed interlocutory
in nature and unappealable pending entry of a final judgment,
order, or decree.  See, e.g., TechnoSteel, LLC v. Beers Const.
Co., 271 F.3d 151, 154 (4th Cir. 2001)("Immediate challenges to a
§ 1404(a) transfer are limited to the filing of a petition for
writ of mandamus with the transferor circuit court prior to the
physical transfer of the file or, once the file is transferred,
to the filing of a motion with the transferee district court to
retransfer the case."); Brock v. Entre Computer Ctrs., Inc., 933
F.2d 1253, 1257 (4th Cir. 1991); In re Ralston Purina Co., 726
F.2d 1002, 1005 (4th Cir. 1984).  At least one United States
Court of Appeals has held likewise under section 158 with respect
to venue decisions by bankruptcy courts.  See, e.g., In re
Dalton, 733 F.2d 710, 714-15 (10th Cir. 1984) (noting it is
"well-established . . . that an order transferring venue of an
action, even if the transfer is to a district in another circuit,
is an interlocutory order and unappealable, except by
certification . . . ."); see also 1 Howard J. Steinberg,
Bankruptcy Litigation § 2.22 (2011)("An order entered by a

11

bankruptcy court granting or denying a motion to transfer venue of a case or proceeding is interlocutory and cannot be appealed absent consent from the district court or, where applicable, the bankruptcy appellate panel.").[7]

Our court of appeals has indicated some flexibility in the finality doctrine when a bankruptcy appeal is under consideration. That approach traces its origins to <u>A.H. Robins Co., Inc. v. Piccinin</u>, 788 F.2d 994 (4th Cir. 1986). In <u>Piccinin</u>, the lower court <u>fixed</u> the venue for thousands of personal injury claims then-pending against the debtor across the United States in a Virginia bankruptcy court. The court of appeals elaborated on why that order was final for purposes of appellate jurisdiction:

> The special or unique reason for this relaxed rule of appealability in bankruptcy is that
>
> > [b]ankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.
>
> This particular appeal illustrates well the justification for the relaxed rule of appealability in bankruptcy cases. Should appeal be denied and trials proceed in the district court of the myriad of claims

_____

[7]Mr. Mitrano has not sought leave, as required, under the other jurisdiction-giving subdivisions of section 158. Neither does he assert that review might be accomplished under either the collateral order doctrine or by mandamus. The court thus does not address the applicability of those alternate potential bases for appellate jurisdiction.

> involved with the possibility of reversal on appeal
> from a final decision in such proceedings, months and
> months of litigation, carried on at great expense to
> all concerned might be voided and the reorganization
> derailed, with consequent extensive delays both in
> reorganization and in resolution of the claims of the
> tort plaintiffs themselves. Weighty considerations of
> fairness and efficient judicial administration,
> therefore, mandate appealability in this case. We
> accordingly dismiss Robins' challenge to the
> appealability of the order in question.

Id. at 1009 (citation omitted); see also McDow v. Dudley, 662

F.3d 284, 289-90 (4th Cir. 2011) (applying Piccinin and stating

as follows: "We . . . hold that a bankruptcy court's order

denying a § 707(b) motion to dismiss a Chapter 7 case as abusive

is a final order within the meaning of 28 U.S.C. § 158(a). . . .

If the denial of a § 707(b) motion to dismiss cannot be appealed

immediately to the district court, the Chapter 7 proceedings

would have to be completed before it could be determined whether

the proceedings were abusive in the first place."); In re

Computer Learning Centers, Inc.  407 F.3d 656, 662 (4th Cir.

2005)(addressing the finality of an interim order of compensation

under Piccinin and stating as follows: "That the bankruptcy court

remains free to act in this manner -- to increase or decrease

amounts previously awarded on an interim and provisional basis --

only underscores the nonfinal nature of its August 9, 2002

order."); In re Urban Broadcasting Corp., 401 F.3d 236, 247 (4th

Cir. 2005) (involving appeal of orders denying reconsideration,

as well as a motion to extend an objection deadline, to postpone

a hearing, and to authorize a partial distribution, with court of

appeals noting as follows under Piccinin: "[T]o be final, an

13

order must 'conclusively determine[] a separable dispute over a creditor's claim or priority," In re Saco Local Dev. Corp., 711 F.2d 441, 445-46 (1st Cir. 1983); see also A.H. Robins Co., 788 F.2d at 1009 (approvingly citing then-Judge Breyer's characterization of 'finality' in Saco).  White does not even argue that the procedural orders at issue qualified under this test. There was no 'separable dispute,' nor were any of White's rights 'conclusively determined.'"); In re Looney, 823 F.2d 788, 790-91 (4th Cir. 1987)(involving delayed action by bankruptcy court on stay-relief motion and court of appeals noting as follows under Piccinin: "Even though the standard for finality of bankruptcy court orders is relaxed from that of non-bankruptcy district court orders . . . , the order in this case is not a final order because it does not resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights of even one of the parties to the Looney's bankruptcy case. . . . The district court below explicitly viewed the bankruptcy court's order as interlocutory, and the order lacks those characteristics that this court identified in Piccinin as substitutes in the bankruptcy context for traditional indicia of finality.").

        In light of the foregoing authorities, the venue transfer order is interlocutory and thus not appealable.  It might be posited that the exercise of appellate jurisdiction is consistent with the resource-saving thesis underlying the principle espoused in Piccinin that  "'finality' . . . is to be

**14**

given not an absolute and inflexible construction in bankruptcy cases . . . [but rather] a 'functional' and 'practical' application . . . ." Id. at 1009.  Our court of appeals has concluded just the opposite, however, in the civil venue transfer setting.  See In re Carefirst of Maryland, Inc., 305 F.3d 253, 256 (4th Cir. 2002)(stating, "[T]here is good reason for not allowing immediate appeals of transfer orders --  "it will be highly unfortunate if the result of an attempted procedural improvement is to subject parties to two law suits: first, prolonged litigation to determine the place where a case is to be tried; and, second, the merits of the alleged cause of action itself.")(quoting Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 181 (4th Cir. 1974) (internal quotation marks omitted)).

        The more functional and practical approach here is not to bend section 158(a)(1) beyond its breaking point, but rather to permit Mr. Mitrano to instead raise any venue challenge he may have in the transferee bankruptcy court.  That court may then decide to return the case here or deny transfer.  In the event transfer is denied, Mr. Mitrano may pursue the matter at the conclusion of the main case or, alternatively, seek early appellate review of the interlocutory order as contemplated by the procedures found in section 158 -- procedures which he has not availed himself of presently.

        Alternatively, if the bankruptcy court's venue transfer decision is deemed to constitute a final order, it withstands

scrutiny on the merits.  The applicable factors governing a section 1412 transfer are as follows:

> 1. The proximity of creditors of every kind to the court; 2. The proximity of the debtor to the court; 3. The proximity of the witnesses necessary to the administration of the estate; 4. The location of the assets; and 5. The economical and efficient administration of the estate.
>
>     The most important of these factors is the fifth factor, the economic and efficient administration of the estate. This factor is an amalgamation of the four preceding factors.

Dunlap v. Friedman's, Inc., 331 B.R. 674, 680 (S.D. W. Va. 2005) (internal characters omitted).

        One can readily discern from the bankruptcy court's bench ruling the good reasons resulting in its ultimate conclusion that the economic and efficient administration of the estate would best be served by transfer.

                                III.

        Based upon the foregoing discussion, it is ORDERED as follows:

        1.    That this appeal be, and it hereby is, dismissed
              pursuant to section 158(a)(1);

        2.    That, in the event the June 13, 2011, order appealed
              from ultimately is found to constitute a final order
              under section 158(a)(1), the order appealed from be,
              and it hereby is, affirmed; and

                                16

3.    That this appeal be, and it hereby is, stricken from the docket.

        The Clerk is directed to forward copies of this written opinion and order to the Clerk of the Bankruptcy Court, counsel of record, and any unrepresented parties.

                                ENTER:   May 23, 2012

                                _____
                                John T. Copenhaver, Jr.
                                United States District Judge

17